OLIVIER A. TAILLIEU (SBN 206546)
o@taillieulaw.com
**THE TAILLIEU LAW FIRM LLP**
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 651-2440
Facsimile: (310) 651-2439

Marc S. Williams (Bar No. 198913)
mwilliams@dordiwilliamscohen.com
**DORDI WILLIAMS COHEN, LLP**
724 South Spring Street, Suite 903
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Attorneys for Plaintiff/Counter-defendant,
OCULU, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| OCULU, LLC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>OCULUS VR, INC.,<br><br>　　　　　Defendant.<br><br>RELATED COUNTERCLAIM | Case No.: 8:14-SACV-196-DOC (JPRx)<br><br>**[REDACTED] PLAINTIFF OCULU, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DAVID DREWS AND PLAINTIFF'S ALLEGED THEORIES OF DAMAGES**<br><br>Date:　　　　June 8, 2015<br>Time:　　　　8:30<br>Courtroom:　9D (Santa Ana)<br>Judge:　　　Hon. David O. Carter<br><br>Trial Date:　　July 28, 2015 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Oculus and its legal defense team backed by Facebook are oddly incredulous about this case. Nobody disputes that plaintiff Oculu started using the trademark "Oculu" – and registered that trademark – *before* Oculus made the mistake of selecting its name. It is self-evident that "Oculu" and "Oculus" are confusingly similar words. All of the lawyers working on this case have mistakenly said one of the names and meant the other multiple times in the course of the litigation.

The evidence also proves that "Oculu" and "Oculus" are confusingly similar trademarks, used by two companies in the fast-growing and always-evolving internet and new media marketplace. Think desktop, to laptop, to smartphone, to tablet, to watches, to glasses. An Oculus virtual reality headset is just another platform for viewing content. Oculu is a content provider. They have virtually the same name. That's a problem the trademark law was intended to solve.

The primary issue on this motion *in limine* is whether plaintiff's damages expert, David Drews, must be barred from testifying about how much Oculus has been unjustly enriched by its use of the infringing trademarks, and how much Oculu has suffered in lost profits as a result of the infringement.

On unjust enrichment, the parties disagree on the law. Oculus contends that the only disgorgement a Court can order in a trademark case is the defendant's profits from the sale of *infringing goods or services*. Oculus does not cite any case law that specifically establishes this narrow interpretation of the trademark damages statute, 15 USC § 1117(a). The plain language of 15 USC § 1117(a) does not limit "sales" to goods and services, and it expressly states that the Court must consider "principles of equity." Oculus should be ordered to disgorge profits from the sale of the infringing trademarks to Facebook. The motion *in limine* should be denied on Mr. Drews' unjust enrichment testimony.

On Oculu's lost profits, Oculus does not point to any flaw in Mr. Drews' methodology, which is summarized on Exhibit 1 to his report. Rather, Oculus' motion is

based on an alleged lack of evidence supporting Mr. Drews' opinion. There is no lack of evidence. The lifeblood of Oculu's business is traffic to its website. That traffic was growing rapidly until Oculus became a sensation in mid-2012. At that moment, Oculu's website traffic suffered a steady decline, along with its revenues. Oculus points to evidence that it contends explains the decline in Oculu's website traffic and refutes the drop in revenue. Oculus' evidence goes to the weight and credibility, not the admissibility, of Mr. Drews' lost profits analysis. The motion *in limine* should be denied on Mr. Drews' lost profit testimony.

## II. OCULUS' MOTION *IN LIMINE* SHOULD BE DENIED AS TO MR. DREWS' OPINION ON UNJUST ENRICHMENT.

For purposes of this motion, the Court should assume likelihood of confusion and assume Oculus has been infringing Oculu's trademark. The Court should also assume that Oculu's business has suffered tremendously since Oculus started using the infringing marks, but that such damages are difficult to prove. ███████████████████████████████████████████████████████████████████████ Under these circumstances, according to Oculus, the Court is prohibited, in fashioning a remedy, from considering Mr. Drews' testimony on what Facebook paid for the infringing Oculus marks. Oculus is wrong.

Oculus' argument is based on the false premise that the Court may only disgorge profits from the sale of infringing goods or services. Nothing in the applicable statute, 15 USC § 1117(a), contains such a limitation. The Lanham Act states that a plaintiff is entitled to recover the "defendant's profits." 15 USC § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Nothing in the statute precludes disgorgement of profits on the sale of an asset.

Oculus intentionally ignores that, in determining damages and disgorgement of profits, the Court must consider "principles of equity." 15 USC § 1117(a). The Lanham Act also expressly requires that the Court exercise discretion in awarding profits:

2
**FIRST AMENDED CROSS-COMPLAINT**

> "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive ***the court may in its discretion enter judgment for such sum as the court shall find to be just***, according to the circumstances of the case."

15 USC § 1117(a) (emphasis added). In its Memorandum of Points and Authorities, Oculus used ellipses to skip the parts of 15 USC § 1117(a) requiring equitable considerations, discretion, and justice in awarding profits. (Memo. at 8:21-28.)

In short, the Lanham Act allows disgorgement of profits, and it does not exclude profits on the sale of an asset. Moreover, even if "profits" in the Lanham Act did exclude profits on the sale of an asset, the Court still has discretion to consider such profits in awarding damages.

None of the cases Oculus cites directly support its position. The case most on point is *Simon Prop. Grp., L.P. v. mySimon, Inc.*, 2001 WL 66408, at *22-23 (S.D. Ind. Jan. 24, 2001), which actually supports Mr. Drews' opinion. In *mySimon*, the jury awarded $11.5 million in profits. At trial, the plaintiff's expert measured damages by estimating the value of the infringing marks based on the price another company paid to acquire the defendant. The expert estimated that the portion of the acquisition price attributable to the infringing marks was $11.5 million. On post-trial motions, the Court vacated the award, but only because the Court awarded injunctive relief and the plaintiff had "conceded that if an injunction were to be entered, it would not seek future royalties or its proposed measure of mySimon's profits." *Id.* at *23. The Court remarked that "the $11.5 million figure is more similar to a reasonable royalty calculation than to what is traditionally thought of as a calculation of 'defendant's profits' in trademark law," but the Court did not preclude a monetary remedy based on any flaw with plaintiff's damages theory.

Oculus claims that ■■■■■■■■■■■■■■■■ – but Facebook purchased the company for $2 billion. In its Form 10-Q, Facebook concedes that the purchase price includes "Tradenames and other," which Facebook values at $132 million. Although no witness from Oculus has any knowledge about which tradenames are encompassed within the

3

**FIRST AMENDED CROSS-COMPLAINT**

1  "Tradenames and other" category, it is beyond a doubt that the infringing tradenames are
2  included.[1]  If it is determined that Oculus infringed Oculu's trademark on the path to such a
3  massive purchase price, and if a portion of the $2 billion was used to purchase infringing
4  tradenames that Facebook admits have a certain value, Oculu should have the opportunity
5  to present evidence of that value through Mr. Drews for the Court's consideration in
6  determining damages.

7      The fact that Oculus chose to distribute all of the profits from the Facebook
8  acquisition to its shareholders – including whatever profits are fairly attributable to the
9  infringing Oculus tradenames – is not a defense.  If those profits were illicit, apportion of
10 them may, in the Court's discretion, be returned to Oculu.

11 **III.  OCULUS' MOTION *IN LIMINE* SHOULD BE DENIED AS TO MR. DREWS'**
12 **OPINION ON LOST PROFITS.**

13     Mr. Drews opines that Oculu lost profits "due to Oculus's emergence as a tech
14 industry phenomenon in the summer of 2012, which led to the crowding out of Oculu from
15 search engine results." (Peterson Decl., Exh. 7 ["Drews Report"] at 9.)  Oculus seeks to
16 exclude this opinion on grounds there is no supporting evidence.  Oculus is wrong.

17     Oculus first argues there is no evidence that Oculus negatively affected Oculu's
18 website traffic from search engine results.  Not so.  There *is* evidence that Oculus caused
19 the drop in Oculu's website traffic.  Oculus does not dispute that Oculu's website traffic
20 was growing rapidly until Oculus became a sensation in mid-2012 and, thereafter, that
21 Oculu's website traffic suffered a steady decline.  (Drews Report at 9.)  These undisputed
22 facts – in and of themselves – are evidence that the emergence of Oculus caused the drop in
23 Oculu's website traffic.  ███████████████████
24 ███████████████████

---

[1] No witness to date has claimed any personal knowledge whatsoever about the $132 million figure, which is why Oculu subpoenaed Facebook to designate a witness on this topic.  Facebook filed a motion to quash the subpoena, which is currently pending in the Northern District Court of California.  (N.D. Cal., Civil Docket No. 5:15-mc-80064-HRL.)

1. █████████████████████████████████████

2. Somehow, Oculus takes no responsibility for this reality, which made matters worse for Oculu when Oculus selected its infringing name and proceeded to become a behemoth. Third, Oculu's founder John Cecil – a 20 year veteran in the industry – testified to the negative effect of Oculus on Oculu's search engine results:

> Q. Please explain.
>
> A. Yes. The mark Oculus, them using Oculus, has been – has negatively affected our search engine optimize – our search engine results on all words that are important to us.
>
> Q. What's your evidence of that, sir?
>
> A. A drop-off in traffic from natural listings from Google.
>
> Q. You attribute that entirely to my client's use of the name Oculus VR or Oculus?
>
> A. Yes.

(King Decl., Exh. 52 [Cecil Depo. Trans., Vol. 1] at 265:8-18].)

Oculus ignores all of the foregoing evidence, which supports Mr. Drews' lost profits opinion. Instead, Oculus focuses only on its evidence. The Court should allow the trier of fact to consider all of the evidence and give it the weight it deems appropriate.

Oculus next argues that Oculu cannot establish any reduction in its revenue following Oculus' emergence. Oculus is wrong again. Oculus does not dispute Oculu's basic business model of using search engines to drive traffic to Oculu's website, offering free trials to consumers, and then converting the free trials into paying customers. Naturally, as Oculu's website traffic declined, so too did its free trials and paying customers. Oculus seeks to debunk Oculu's decline in revenues by criticizing Mr. Drews for relying in his report on estimates and on Mr. Drews' communications with Mr. Cecil. Oculus also points once again to conflicting evidence. The Court should allow the trier of fact to consider all of the evidence and give it the weight it deems appropriate.

**FIRST AMENDED CROSS-COMPLAINT**

## IV. OCULUS' MOTION *IN LIMINE* SHOULD BE DENIED AS TO MR. DREWS' TESTIMONY ON THE *SLEEKCRAFT* FACTORS.

Finally, Oculus seeks to exclude Mr. Drews from providing testimony about the *Sleekcraft* likelihood of confusion factors. This part of Oculus' motion is overbroad and vague and probably could have been avoided if Oculus had not elected to pass on taking Mr. Drews' deposition. As stated in his report, Mr. Drews "assumed" liability for purposes of his damages analysis. He nonetheless should be free to discuss the evidence of trademark infringement in this case to support his opinion that Oculus' unjust enrichment and Oculu's lost profits are attributable to such infringement. The motion *in limine* should be denied on Mr. Drews' testimony about the *Sleekcraft* factors.

## V. CONCLUSION

For all of the foregoing reasons, Oculus' motion *in limine* should be denied.

Respectfully Submitted,

Dated: April 27, 2015

**THE TAILLIEU LAW FIRM LLP**
**DORDI WILLIAMS COHEN, LLP**

By: /S/ Marc S. Williams
Marc S. Williams
Attorneys for Plaintiff/Counter-defendant, OCULU, LLC